IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY MARVIN GREEN,<br>        Petitioner,<br><br>v.<br><br>ATTORNEY GENERAL OF<br>PENNSYLVANIA, et al.,<br>        Respondents. | Civil Action No. 07-44 Erie<br><br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner, Harry Marvin Green, is a state prisoner incarcerated at the State Correctional Institution Laurel Highlands, located in Somerset, Pennsylvania. He is serving a term of imprisonment of thirty to sixty months, imposed by the Honorable Ernest J. DiSantis, Jr., of the Court of Common Pleas of Erie County on July 8, 2004. Currently pending before this Court is his Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. [Document # 1]. He explains his claims more fully in his Brief for a Writ of Habeas Corpus. [Document # 20]. Respondents have submitted the relevant portions of the state court record in hard-copy format and the documents contained therein are indexed and numbered 1 through 32. The state court record will be cited to as "SCR No. __". Respondents also have submitted transcripts in hard-copy format.

    **A.**    **Relevant Procedural History**

In October 2003, Petitioner was charged with two counts of indecent assault upon a

1

person under thirteen years of age, in violation of 18 Pa.C.S. § 3126, and two counts of corruption of minors, in violation of 18 Pa.C.S. § 6301. The charges arose from an incident occurring in or around July 19, 2003, in which Petitioner had indecent contact with two minors, one ten and one seven years of age. (SCR No. 1).

Petitioner retained James R. Jenks, Esquire, to represent him. At the time of the preliminary hearing, Petitioner entered into a plea agreement whereby he agreed to plead no contest to one count of indecent assault and the Commonwealth agreed to withdraw the other charges. (SCR No. 1 at p. 4). In addition, the Commonwealth indicated that it would have no objection to probation and advised Judge DiSantis of that at the subsequent sentencing hearing. (Id.; see also SCR No. 21 at p. 2).

On January 28, 2004, Petitioner appeared before Judge DiSantis and entered a plea of no contest to the charge of indecent assault, and the remaining charges were withdrawn. At the plea hearing, James K. Vogel, Esquire, Assistant District Attorney, advised Petitioner that "[t]he maximum sentence that you face for this charge is up to a $10,000 fine and five years in jail." (1/28/2004 Plea Hearing Tr. at 11). Petitioner also executed a Statement of Understanding of Rights, which provided:

> I understand that the Judge is not bound by the terms of any plea bargain unless the Judge chooses to accept it. The Judge will announce his/her decision at the conclusion of the plea colloquy which follows my signing of this paper. *If the Commonwealth agrees to make a sentencing recommendation on my behalf, the Judge will not be bound by this recommendation and I understand that I will not be permitted to withdraw my guilty/no contest plea [if] this should occur.*

(SCR No. 4 (emphasis added)).

After accepting Petitioner's plea, Judge DiSantis ordered a presentence investigation report and a Megan's Law assessment and set sentencing for April 28, 2004 (which was subsequently postponed until July 8, 2004). (1/28/2004 Plea Hearing Tr. at 14; see also SCR No. 5). The following exchange then occurred:

> The Court: Mr. Jenks, you may not be aware of this but I'm pretty familiar with Mr. Green's background. I prosecuted him approximately 20 years ago when I was in the district attorney's office. I don't believe it's going to create a problem for me or create an appearance of impropriety but I thought I'd put

2

    everybody on notice.

    Mr. Jenks: I am aware of that involvement, Your Honor.

    The Court: I'm pretty familiar with his history.

    The Court: All right.  That will conclude this matter.

(Id. at 14-15).

  On July 8, 2004, after consideration of the presentence investigation report, the Pennsylvania Sentencing Guidelines, the Pennsylvania Sentencing Code and all of its factors, as well as the statements made by counsel and Petitioner, Judge DiSantis sentenced Petitioner to thirty to sixty months imprisonment effective that date.  (SCR No. 7; SCR No. 13 at p. 1).  The sentence imposed was at the top end of the standard range of the sentencing guidelines.  Jenks filed a motion to reconsider sentence, arguing that the circumstances of Petitioner's case did not justify the sentence imposed and noting that the prosecution had not opposed a sentence of probation.  Judge DiSantis denied the motion for reconsideration on July 19, 2004.  (SCR No. 9B).

  Deanna L. Heasley, Esquire, of the Office of the Public Defender, was then appointed to represent Petitioner.  She filed an appeal to the Superior Court of Pennsylvania, in which it was argued that Jenks provided Petitioner with ineffective assistance for failing to request that Judge DiSantis recuse himself because he had been involved in a case brought against Petitioner in his previous employment as a prosecutor.  (See SCR No. 17).  On June 9, 2005, the Superior Court issued a Memorandum Opinion, noting: "[O]ur Supreme Court has held that, as a general rule, a defendant should wait to raise claims of ineffective assistance of trial counsel until collateral review."  (Id. at p. 2 (citing Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002)).  It, therefore, dismissed without prejudice Petitioner's claim of ineffective assistance of counsel and advised him that he could raise the claim at issue "and any other such claims" in a post-conviction motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  (Id. at p. 4).

  On August 6, 2005, Petitioner commenced post-conviction proceedings by filing a *pro se* PCRA motion, which then was supplemented by his court-appointed counsel, William

3

Hathaway, Esquire. (See SCR Nos. 18-21). Petitioner asserted that Jenks provided him with ineffective assistance by inducing him to enter into the plea when he knew or should have known that the court would not sentence him to probation. Petitioner did not raise the claim of ineffective assistance that he had raised on direct appeal and which had been dismissed without prejudice, *i.e.*, that Jenks was ineffective for failing to request that Judge DiSantis recuse himself.

On October 7, 2005, Judge DiSantis issued an Opinion denying PCRA relief. He determined that a hearing was not necessary and denied Petitioner's claim, holding:

> In this case, defense counsel negotiated a favorable plea bargain for the petitioner that considerably reduced his exposure to additional incarceration. It resulted in dismissal of the three charges and the Commonwealth's promise not to object to probation. The Commonwealth honored its agreement. Furthermore, it was made clear to the petitioner at the time he entered his plea that any sentencing recommendation was not binding upon this Court and that it was free to sentence the petitioner as it deemed appropriate after the preparation of a presentence report and a sentencing hearing.
>
> Based upon the above, the petitioner has failed to demonstrate that counsel was ineffective. Simply stated, there is no arguable merit to his claim because the petitioner received the benefit of his plea agreement. It is true that he did not receive the sentence he hoped for. However, his frustrated expectation of sentence does not render his plea counsel ineffective.

(SCR No. 21 at pp. 4-5).

Petitioner, through Hathaway, filed a notice of appeal to the Superior Court. (SCR Nos. 24, 26). On August 11, 2006, the Superior Court issued a Memorandum affirming Judge DiSantis's decision. (SCR No. 30). It noted that the record showed that, prior to entering his plea, Petitioner was advised that he could receive a sentence of imprisonment of up to five years and was further advised that the judge was not bound by the terms of any plea agreement. (Id. at pp. 5-6). It then held:

> There is no arguable merit to his claim that his plea counsel rendered ineffective assistance by failing to apprise him, at the district justice level, of the ramifications of entering a no contest plea. At the oral plea colloquy … [Petitioner] was provided the opportunity to ask the trial court any questions to clarify the ramifications of his plea prior to entering it, and he responded that he had no questions and understood everything that had occurred at the colloquy. The written plea colloquy signed by [Petitioner] clearly stated that he understood that the trial court was not bound

4

> be the terms of any plea agreement unless the court chose to accept the terms and that the court was not bound by any sentencing recommendation made by the Commonwealth.
>
> As the PCRA court points out, [Petitioner] benefitted from entering the plea agreement in that his exposure to additional incarceration was considerably reduced and that the Commonwealth agreed not to object to a sentence of probation. The record supports the PCRA court's determination that [Petitioner] failed to show that his plea counsel induced an invalid plea by ineffective assistance of counsel. 'Our law does not require that a defendant be totally pleased with the outcome of his decision to plead [nolo contendere], only that his decision be voluntary, knowing and intelligent.'

(Id. at pp. 7-8 (bracketed text in original) (quoting Commonwealth v. Pollard, 832 A.2d 517, 524 (Pa.Super.Ct. 2003)).

On February 16, 2007, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal. (SCR No. 31). Petitioner then filed with this court his petition for writ of habeas corpus. [Document # 1]. He sets forth his claims more fully in his Brief for a Writ of Habeas Corpus [Document # 20], in which he asserts:

    Claim 1:    Jenks was ineffective for not having him evaluated to determine if he was competent to enter his plea (Document # 20 at pp. 1-2);

    Claim 2:    Jenks was ineffective in failing to advise him that although he was pleading no contest, he could still be sentenced to a term of imprisonment, (id. at pp. 3-4);

    Claim 3:    Jenks was ineffective for not disclosing to him his right to withdraw the no contest plea when Judge DiSantis sentenced him to a term of imprisonment instead of to probation, (id. at pp. 5-7);[1]

---

[1] In "Claim 5," Petitioner contends that Hathaway was ineffective for failing to raise "Claim 2" during the PCRA proceeding. (Document # 20 at pp. 11-12). Relief on Claim 5 is foreclosed by 28 U.S.C. § 2254(i), which states: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." See also Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (a petitioner has no Sixth Amendment right to representation during a PCRA proceeding) (citing Commonwealth v. Finley, 481 U.S. 551, 554 (1987)); 28 U.S.C. § 2254(a) (state prisoner is entitled to habeas corpus relief only if he demonstrates that his state custody violates the Constitution, laws, or treaties of the United States.) It is further noted that Claim 2 is based upon an inaccurate factual basis, as Petitioner was advised that he would not be permitted to withdraw his no contest plea if Judge DiSantis did not accept the Commonwealth's sentencing

(continued...)

> Claim 4: Jenks was ineffective for failing to seek the recusal of Judge DiSantis, (id. at pp. 4-10).

**B.** **Discussion**

**1.** **Claims 1, 3 and 4 Are Procedurally Defaulted**

The doctrine of "exhaustion" requires a state prisoner to first present his federal constitutional claims to the state courts before raising those claims in federal habeas court. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999). This requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" Cristin, 281 F.3d at 410 (quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)). In order to properly exhaust a claim, a petitioner must fairly present it to each level of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (emphasis added) (citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848; Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996)). In Pennsylvania, this requirement typically means that a petitioner in a non-capital case must present every claim raised in his federal petition to both the Common Pleas Court and the Superior Court either on direct appeal or during PCRA proceedings. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

The only claim that Petitioner arguably has exhausted properly is Claim 2, in which he claims that Jenks failed to sufficiently advise him about the sentencing ramifications of entering his plea of no contest. The court shall assume that Claim 2 is substantially equivalent to the claim that Petitioner raised during the PCRA proceeding, where he contended that Jenks was ineffective for advising him to enter into the plea when counsel knew or should have known that the court would not sentence him to probation.

Petitioner did not raise Claim 1 or Claim 3 in the state courts and thus he failed to exhaust either of those claims. Although Petitioner raised Claim 4 in his direct appeal, the Superior

---

[1](...continued)
recommendation of probation. (SCR No. 4).

Court dismissed it without prejudice to Petitioner's ability to raise it in a subsequent PCRA petition, because under Pennsylvania law claims of ineffective assistance are not to be raised on direct appeal. Notwithstanding the Superior Court's express directive that Petitioner could raise Claim 4 in a subsequent PCRA petition, Petitioner did not pursue that claim further and, as a result, he failed to properly exhaust that claim as well. Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007) (the petitioner's claims of ineffective assistance were not exhausted properly even though he had raised those claims on direct review. State law required that ineffective assistance claims be raised in state post-conviction review and the petitioner had not sought such review).

Generally, a district court should require that a state prisoner return to state court for review of unexhausted claims. See, e.g., Crews v. Horn, 360 F.3d 146 (3d Cir. 2004). However, a federal court may excuse a petitioner's failure to exhaust in cases where the court can confidently predict that the state courts would not entertain review of the claims because such review would be barred by a state procedural rule. Slutzker v. Johnson, 393 F.3d 373, 380-81 (3d Cir. 2004); Whitney v. Horn, 280 F.3d 240, 249-53 (3d Cir. 2002); Lines, 208 F.3d at 162-66. That is the case here, because the PCRA statute of limitations and waiver rules would foreclose review of the claims now in state court. 42 Pa.C.S. § 9544(b), § 9545(b). Id. at 380-81; Whitney, 280 F.3d at 251; Lines, 208 F.3d at 165. However, excusing Petitioner from complying with the exhaustion requirement based on a finding of "futility" does him no good, because the Third Circuit Court has made clear that when exhaustion is excused in such a circumstance, the claims at issue are procedurally defaulted. Id. at 380-81 (citing Doctor, 96 F.3d at 683); Whitney, 280 F.3d at 252; Lines, 208 F.3d at 160; see also Coleman, 501 U.S. at 729-30. The procedural default doctrine applies to bar federal habeas relief when a state court has declined *or would decline* to address a petitioner's federal constitutional claims because he failed to meet a state procedural requirement. Id. at 381.

A petitioner whose constitutional claim has not been addressed on the merits due to the failure to comply with a state procedural rule can overcome the default, thereby allowing federal court review, only if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual

7

prejudice."[2] Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). The only possible "cause" that Petitioner could point to is his PCRA counsel Hathaway's decision not to (or failure to) raise Claims 1, 3 or 4 in the PCRA proceeding. However, Hathaway's conduct cannot be relied upon to demonstrate the "cause" necessary to overcome Petitioner's default, because Petitioner had no Sixth Amendment right to representation during his PCRA proceeding. Cristin 281 F.3d at 420 (only attorney error that rises to the level of a Sixth Amendment violation can constitute "cause") (citing Finley, 481 U.S. at 554 and Coleman, 510 U.S. at 752)).

Accordingly, because Claims 1, 3 and 4 are procedurally defaulted and the "cause and prejudice" exception is inapplicable to excuse his default, Petitioner is not entitled to habeas relief on those claims.

### 2. **Claim 2 Has No Merit**

In Claim 2, Petitioner contends that Jenks provided him with ineffective assistance for not explaining to him that he could be sentenced to a term of imprisonment even if he entered a no contest plea and that Jenks improperly induced him into entering the plea by making him think that he would receive a sentence of probation. Because the Superior Court adjudicated this claim on the merits, this court must review it under the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (codified at 28 U.S.C. § 2254(d)). Under AEDPA, federal habeas relief may only be granted when the state court's decision on the merits of a claim "resulted in a decision that was contrary to, or involved an

---

[2] Under the "fundamental miscarriage of justice" doctrine, a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995); House v. Bell, 547 U.S. 518 (2006); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). Coleman, 501 U.S. at 750-51. Petitioner does not argue that he has satisfied this exception, and it only applies to a petitioner who demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. Actual innocence means factual innocence, not legal insufficiency, and the miscarriage of justice exception applies only in extraordinary cases. It is not applicable to this case.

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert, 387 F.3d at 234. The "clearly established Federal law" applicable to analyzing a claim of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that, in order to establish that counsel's service was constitutionally deficient, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. See also Wiggins v. Smith, 539 U.S. 510 (2003).

The Superior Court's adjudication of this claim was not "contrary to" Strickland. In making its evaluation, it cited to Pennsylvania decisions that set forth Strickland's standard and that is sufficient to satisfy review under the "contrary to" clause of § 2254(d)(1). (SCR No. 30 at 4 (citing Commonwealth v. Johnson, 868 A.2d 1278, 1281 (Pa.Super.Ct. 2005); Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999); Commonwealth v. Meadows, 787 A.2d 312, 319-20 (Pa. 2001)). As the Williams Court instructed, "a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." 529 U.S. at 406; Werts v. Vaughn, 228 F.3d 178, 202-04 (3d Cir.2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.")

The dispositive question, then, is whether the Superior Court's adjudication of this ineffective assistance of counsel claim was an "unreasonable application" of Strickland. To prevail under this standard of review, Petitioner must demonstrate that the state court's denial of this claim "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); Abu-Jamal v. Horn, 520 F.3d 272, 279 (3d Cir. 2008) ("Under the 'unreasonable application' prong of §2254(d)(1), 'the question...is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold.")

The Superior Court's adjudication was not unreasonable. It succinctly discussed why this

9

claim has no merit. During the plea proceeding, Petitioner was advised that the maximum penalty for indecent assault was "five years in jail" and that by entering a plea of no contest he was "placing [himself] before the Court for sentencing just as if [he'd] gone to trial and been found guilty[.]" (1/28/2004 Plea Hearing Tr. at p. 11). Petitioner indicated that he understood the sentencing ramifications of his plea and stated: "My lawyer explained it to me." (Id. at pp. 11-12). Moreover, the Statement of Understanding of Rights that Petitioner signed expressly informed him that: "If the Commonwealth agrees to make a sentencing recommendation on my behalf, the Judge will not be bound by this recommendation and I understand that I will not be permitted to withdraw my guilty/no contest plea [if] this should occur." (SCR No. 4).

Thus, the record supports the Superior Court's determination that Petitioner failed to show that Jenks was ineffective. Petitioner was clearly advised that he was subject to a possible sentence of imprisonment and not probation even though the Commonwealth was not opposed to the imposition of probation. Petitioner has not shown that Jenks provided him with constitutionally deficient representation and has not demonstrated that the state court's adjudication of this claim was an "unreasonable application of" Strickland. Therefore, he is not entitled to habeas relief on this claim.

### C. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural

ruling." Applying this standard here, jurists of reason would not find it debatable whether Claims 1, 3 and 4 are procedurally defaulted and whether Claim 2 is without merit. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4(B), the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: September 30, 2008